Daniel, J.
We have examined this case, and we concur with his Honor, that the judgments rendered and the executions issued by the Justice against Hinton, were-good in law. Each of the warrants on its face appears to be for a debt due by note, and each note within the jurisdiction of a Justice. The defendant in these warrants, being summoned, appeared and confessed that he owed the debts in manner and form as was stated in each of the warrants. After this confession, the Justice had nothing further to do, btit to render judgments against Hinton, upon his confession,'that he,v was indebted to the plaintiff in the manner and form as stated in each of the warrants. It being a rule of law, that what is admitted need not be proved, the Justice was bound to give judgment for the plaintiff, without any other proof of the execution by Hinton of the two notes, mentioned in the face *374 of the two warrants. How can it then be said that the justice exceeded his jurisdiction ? It is said, that the consent of Hinton could not give the justice jurisdiction of a matter, which the law did not. This is admitted. As, if thp justice had issued his warrant in favor of the plaintiff for $158 80 cents with interest, and Hinton had then come before him and confessed a judgment for that sum, it would have been void, because the law did not give the justice jurisdiction of such a sum ; and the assent of Hinton, could not in such a case have confessed jurisdiction. But what did Hinton consent to ? He confessed to the justice, on trial, that he had executed to the plaintiff two notes, one for the sum of $80 00 and the other for the sum of $78 80, and he confessed judgments on the same. Was that not within the jurisdiction of the justice? And could the justice have refused to give the plaintiff' judgment upon these admissions ? It seems to us, that there was no other evidence necessary to substantiate the truth of the allegations made upon the face of each warrant, and that the justice had jurisdiction and was bound in law to, render the judgments he did. Hinton was forever concluded by these judgments and executions; he never could have been heard to allege, that in fact he did not execute the two small notes, which he confessed to the justice he had executed. The constable ought to have used due diligence in collecting these executions. It appears, however, that he did not levy on the personal property of Hinton then in his possession— no other execution having a lien on it. It did not appear that there was a deficiency of personal property to satisfy the plaintiff's executions, so as to render it necessary for the constable to levy on the land. And it did not appear that the constable ever refused to levy on the land Hinton then lived on, unless he was indemnified ; therefore, that part of the charge of the Judge, which ruled that'no indemnity was necessary to require the constable to levy on the land, was not called for in the evidence of the *375 canse. We, however, are not disposed to say that it was erroneous. We think that this case is within the principle of the case of State v. Stephens, 3 Ired. 92. There, the small notes, which had been given by the obligor for the large one, were produced in evidence by the plaintiff ; here, they are confessed to be in esse by Hinton, the alleged maker of them ; therefore their production was not demandable by the justice. The judgment must be affirmed.
Ruffin, C. J.
Although the relators might have an action against Belvin on his engagement to divide the debt, so as to take two judgments for it, yet they could not recover on his official bond for neglecting to collect the note for §158 80. For the construction of the act, Rev. St. e. 24, s. 7, is, that a constable’s sureties are responsible for his faithfulness in such agencies, and such only, as relate to debts Avhich might be recovered by suit before a single magistrate j which is not the case with this bond.
To get clear of that difficulty, the relators say that their “debtor, Hinton, gave two new notes in the place of the old one, on each of which, the one for §80, and the other for §78 80, he confessed a judgment; and that it was the duty of the constable to collect those judgments, and for his neglecting to do so that his sureties are liable. Of that opinion are my brethren; and it is my misfortune again to think by myself.
The point depends upon the question, whether the justice of the peace had jurisdiction in the cases ; for, if he had not, they were coram non jtulice, and the judgments had no efficacy. It appears to me that the justice had no jurisdiction. In the first place, it is absolutely false that two new notes were given for sums within the jurisdic-diction of a magistrate, as supposed in the warrants. In point of fact, two warrants were brought for different parts of the money due on one bond, which, in the whole. *376 exceeded the jurisdiction of the justice; though, if it had been divided and new notes.taken therefor, as supposed in the warrants, they would have been within the jurisdiction. Now, I think that which was actually done in the case, could not legally be done. The rule of the common law was, that judgments of inferior tribunals must appear affirmatively to be given on a case within the jurisdiction. In England, it would have been necessary, not only that the warrant should purport to be issued for a debt due on a bond, but also that the magistrate should adjudge that it was thus due ; and then, if it turned out to the contrary, the judgment would not bind the party. Moravia v. Sloper, Will. Rep. 30, Herbert v. Cook, Id. 36, note, Morse v. James, Id. 122. That is now very much altered by statute in England, 2 Chitt. Gen. Prac. 130, and Seq.; and I admit that it is otherwise here by force of the provisions in our statutes, which sustain the proceedings of justices, notwithstanding defects of form, and give an appeal from them to the Courts of record. If, upon the face of the proceedings, there is not an apparent defect of jurisdiction, we presume its existence, until the contrary be shewn. But the rule can be changed no further, as it seems to me ; for T think it cannot be possible, that a justice of the peace here can confer on himself a jurisdiction in a cause, by adjudging that a debt is due on a bond for $80, when in fact the amount of it was $158 80, and it was due on a bond for that sum or on promises. Although there is a presumption in our law in favor of the judgments of justices, yet when it appears affirmatively, upon proof, that a judgment was rendered upon a case — the actual subject matter not within the justice’s jurisdiction — I hold it to be void, just as much as if the excess of jurisdiction appeared in the adjudication itself. If it be not so, it is in the power of an inferior magistrate to draw every case before him, by untruly adjudging the facts necessary to constitute his jurisdiction ; and the only remedy would be by *377 appeal ox- writ of false judgment, upon which the party would be compelled to give security for the debt. Thus it may be shewn upon evidence, that a judgment rendei--ed upon confession, by a justice of one County, which pui-ports to have been rendered in the justice’s proper County, was in fact given in another County; and thereupon it shall be adjudged void, so that no action will lie thereon. Hamilton v. Wright and Parish, 4 Hawks 283. It must be so in respect of the question oí jurisdiction; otherwise it would be vain for the Legislature to attempt to limit it. The resti-iciion can ever be evaded by bringing a case colorably within the jurisdiction, if that would do,
' The act says that “ debts due on bonds, when the principal does not exceed $ 100, shall be cognizable and determinable before one justice of the peace out of Coui-t.” Larger debts due on bonds are not cognizable before him ; and if he assume a jurisdiction over such, his acts are void. On no proof that could have been offered in this case, consistent with the truth, could the justice have given a valid judgment for the relators. But it is said, that proof was dispensed with by the confession of the judgments by the debtor, and that thereby he admitted that such bonds were given, as were stated in the warrants, and concluded himself as to that point. But I think the confession makes no difference, in respect of the point of jurisdiction; for it was still a judgment of the justice, that the sum for which it was rendered, was due upon a bond for that amount. The confession dispensed with proof of the bond by witnesses. But it could not dispense with the production of the bond — of some instrument purporting to be a bond — of Hinton, for a sum within the justice’s jurisdiction, as supposed in. the warrant; for the jurisdiction is of debts of $100 or under, due on bonds, that is, on bonds actually existing. An admission to that effect, contrary to the fact, in order to give a jurisdiction to a justice, cannot enlarge the *378 jurisdiction, because it is limited by the law. To say, then, that Hinton was concluded by the judgments and estopped to deny their sufficiency, is assuming the whole matter in debate.. For if the subject matter, as in fact existing, was not within the jurisdiction of the magistrate, he could not take the confession, nor give judgment on it, and those acts were void; and void judgments, like other void acts, estop nobody. The restric-triction upon the jurisdiction is imposed as a matter of public policy, and not as a privilege to the debtor. Therefore the debtor cannot waive a defect of jurisdiction, and an attempt to do so by an admission that he had given two bonds, each for less than $100, when in truth there was but one, and that one for more than $100, and all this known to the justice of the peace, is a concerted fraud upon the law, which ought not to be tolerated. Such an admission cannot shield the proceedings from an investigation into their validity, by any estoppel alleged to arise out of the proceedings themselves, as to one of the parties to the fraud. Here one’s eyes cannot be shut, so as not to see that the fact is, that the two warrants were brought for the debt due on the one bond for $158 80,. notwithstanding the gloss put on it by the magistrate in saying, that in- entering- the judgments, he acted on the confession — meaning to insinuate, that he-took no note of the bond itself. Then why did he take it l Why did he attempt to cancel, it by writing as usual, “ Judgment,” on the face of it ? Why did he not ask for the other bonds, on which the judgments were rendered, if, any such he supposed to exist, besides that one for the., sum ef $158 80. The act of 1794, Rev, St. c. 62. s, 16 requires, when a justice’s execution is levied on land, that he shall return it “ with all the papex-s on which the judgments was given”' to the County Court. Why are the papers to be returned ? No doubt, that it may appear therefrom that it was a case within the Justice’s jurisdiction,.so that the *379 Court may order a sale thereon, and the purchaser get a good title. I believe justices never give judgment on a bond, without having it produced and cancelled, unless it may be in the case of a lost bond. That exception stands on peculiar grounds, which leave the general rule unimpaired : for the justice finds impliedly, if not éxpressly, the loss of the bond as well as its execution. But in other cases they ought to, and do, require the bond to be produced as the source of their jurisdiction. In this case, the magistrate, no doubt, considered that he was doing so, when he took the bond for 1158 80; and if so, he must have intended to give the two judgments on it. It seems to me, that is not sustainable. The case has been compared to Stephens’ ctise, 3 Ired. 92, and said to be within the same principle. But it appears to me, that no two cases could be more unlike. There a creditor put a bond for $125 25 into a constable’s hands for collection, and he took a new bond for $80 and entered a credit therefor on the first one, and then took judgment on the new bond and for the balance due on the other. There the jurisdiction did not exist colorably, merely, but it existed in fact, as there were two bonds actually, and each was within the cognizance of a justice. But here there is no such bond as either of those set forth in the warrants. It was said, indeed, that the difference is merely a matter of form, and that it is useless to require new bonds to be actually given, as it is just as easy foi the debtor to give two bonds as to confess two judgments. But surely that is not a lawyer’s answer to an objection of the want of jurisdiction, founded upon a statute which fixes a restricted jurisdiction of an inferior tribunal by the form of the securities for the debt and the just amount of the debt, according to the different kinds of securities, as bonds and notes, liquidated or unsettled accounts. It is easy to give notes for sums of less than $100. Then let them be given, if the parties wish to go before a justice of the peace for judgment: for without them the *380 law gives no authority to a single magistrate to take cognizance of them. • Here they were not given, and therefore there was no j urisdiction. If a suit were brought upon the bond for $158 80, what defence could be made to it? It could not be pleaded, that the relators took from the debtor his two bonds in satisfaction of it, for in fact there never were any such bonds. Nor could he plead the former judgments thereon; for as judgments on it, they were void. So that if their judgments are good by force of the form of the warrants, and the confession of the judgments, both that bond and the two judgments are subsisting securities for debts against Hinton: which I think cannot be. I am of the opinion therefore that the judgment ought to be reversed.
Per Curiam. Judgment affirmed.